*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAUL SATKOWIAK and PRIZZA SATKOWIAK,

UNPUBLISHED
July 15, 2026
8:43 AM

Plaintiffs-Appellants,

v

No. 374403
Bay Circuit Court
LC No. 2021-003474-CZ

TOWNSHIP OF BEAVER,

Defendant-Appellee.

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Plaintiffs Paul and Prizza Satkowiak appeal as of right the trial court's order granting summary disposition to defendant, Beaver Township. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

The Satkowiaks own property on River Road in Beaver Township. Sometime in the early 2000s, the Satkowiaks began operating a snowplowing and lawn care business on the property. In 2008, they started another business, P&P Contracting, which they also operated on the property.

Sometime in 2015, at the request of the then-Township Supervisor, the Satkowiaks applied for a special use permit. The Township granted the permit, but imposed several conditions on the Satkowiaks' commercial use of the property. That permit was later revoked on August 20, 2019 after the Beaver Township Planning Commission determined that the Satkowiaks had violated the permit's conditions. The Satkowiaks did not challenge the permit's revocation.

Thereafter, on December 6, 2019, the Township sent a letter to the Satkowiaks directing them to cease commercial operations on the River Road property and to comply with the Township's zoning ordinance. The Township warned that continued commercial activity on the property after January 1, 2020 would result in the issuance of a municipal civil infraction. Subsequently, on January 8, 2020, the Township issued a civil infraction ticket to Paul Satkowiak, asserting that he had "engaged in unauthorized commercial activity" in violation of the Township's zoning ordinance. The Township then initiated an enforcement action against him in the district

-1-

court. Following a three-day bench trial, the district court found that Paul had violated the zoning ordinance "by operating a trucking, landscaping, and snowplowing business" on the property. The district court assessed a monetary fine and ordered Paul to "cease and desist from operating trucking, landscaping, or snowplowing business" on the property and to refrain from further violating the Township's zoning ordinance. Paul appealed that decision to the circuit court, which affirmed the district court in part and reversed and remanded in part. Paul applied for leave to appeal in this Court, but his application was denied.

In the meantime, the Satkowiaks filed the instant action in the circuit court, asserting that the Township's zoning ordinance, as it related to the special-use-permitting process, was unconstitutional and "void for vagueness." In response, the Township filed a motion for summary disposition under MCR 2.116(C)(7) and (C)(10), contending that the Satkowiaks' claim was barred by the doctrines of res judicata and collateral estoppel. Following supplemental briefing and a hearing on that motion, the trial court denied the Township's motion for summary disposition.[1]

The Satkowiaks filed an amended complaint, again asserting that the Township's zoning ordinance and its former zoning ordinance were unconstitutionally vague and seeking a declaration that they could continue to operate their businesses without interference from the Township. The Township answered the amended complaint. It eventually filed a second motion for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that the Satkowiaks were unable to show that the zoning ordinance was facially unconstitutional because it was too vague. Following oral argument on the motion, the trial court granted the Township's motion and summarily dismissed the Satkowiaks' complaint. This appeal follows.

---

[1] On appeal, the Township again asserts that the Satkowiaks' claim is barred by res judicata and collateral estoppel. The Township, however, has not filed a cross appeal challenging the trial court's denial of their first motion for summary disposition. "Generally, failure to file a cross appeal precludes an appellee from raising an issue not appealed by appellant." *Kosmyna v Botsford Comm Hosp*, 238 Mich App 694, 696; 607 NW2d 134 (1999). And, although "an appellee need not file a cross appeal in order to argue an alternative basis for affirming the trial court's decision, even if that argument was considered and rejected by the trial court," *id.*, in this case, the trial court's denial of summary disposition was in response to an entirely separate motion for summary disposition. Moreover, the Township does not state in its brief that the trial court denied its first motion for summary disposition, nor does it argue that the trial court erred by doing so. Instead, the argument is couched entirely in the form of an alternative basis for relief. But in the Township's second motion for summary disposition, which led to the order that is the basis for the present appeal, the Township did not properly raise the issue of res judicata or collateral estoppel. Considering the procedural history of their case, we conclude that a cross appeal of the denial of summary disposition was necessary. And, because no such appeal has been filed, the Township's argument relating to res judicata and collateral estoppel is precluded. See *id.*

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The Satkowiaks argue that the trial court erred by granting summary disposition to the Township. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Challenges to the constitutionality of an ordinance are also reviewed de novo. *People of Grand Rapids v Gasper*, 314 Mich App 528, 535-536; 888 NW2d 116 (2016). Likewise, we review de novo the interpretation of an ordinance. *Id*. at 536. The rules governing the interpretation of a statute also govern the interpretation of an ordinance. *Shepherd Montessori Center Milan v Ann Arbor Charter Township*, 259 Mich App 315, 342; 675 NW2d 271 (2003).

### B. ANALYSIS

"All statutes and ordinances are presumed to be constitutional and are construed so unless their unconstitutionality is clearly apparent." *Kenefick v City of Battle Creek*, 284 Mich App 653, 654-655; 774 NW2d 925 (2009) (quotation marks and citation omitted). Challenges to the constitutionality of an ordinance may allege that the ordinance is unconstitutional "as applied" or that it is unconstitutional "on its face." *Paragon Properties Co v City of Novi*, 452 Mich 568, 576; 550 NW2d 772 (1996). "A facial challenge is a claim that the law is invalid *in toto*—and therefore incapable of any valid application, whereas an as-applied challenge considers the specific application of a facially valid law to individual facts." *Promote the Vote v Secretary of State*, 333 Mich App 93, 117; 958 NW2d 861 (2020) (quotation marks and citation omitted). Here, the Satkowiaks do not claim that the Township's zoning ordinance is unconstitutional only when applied in a specific circumstance. Rather, they contend that it is unconstitutional under all circumstances. Accordingly, they have raised a facial challenge to the validity of the zoning ordinance.[2]

"A party challenging the facial constitutionally of an ordinance faces an extremely rigorous standard." *Bonner v City of Brighton*, 495 Mich 209, 223; 848 NW2d 380 (2014) (quotation marks and citation omitted). "To prevail, plaintiffs must establish that no set of circumstances exists under which the ordinance would be valid and the fact that the ordinance might operate

---

[2] In their amended complaint, the Satkowiaks contended that both the current and former versions of the Township's zoning ordinance were unconstitutionally vague. And, in their brief on appeal, they maintain that both versions of the ordinance are unconstitutional. However, the Satkowiaks' argument as it relates to the former version of the ordinance consists only of an announcement of unconstitutionality. They do not direct this Court to the allegedly unconstitutional language in the former version of the ordinance, nor do they proffer any argument as to why that language is unconstitutionally vague. As a result, we conclude that they have abandoned their challenge to the former ordinance. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

unconstitutionally under some conceivable set of circumstances is insufficient to render it invalid." *Id.* (quotation marks, citation, and alterations omitted). As explained by our Supreme Court in *Bonner*, "if any state of facts reasonably can be conceived that would sustain the ordinance, the existence of the state of facts at the time the law was enacted must be assumed and the ordinance upheld." *Id.* (quotation marks and citation omitted).

The Satkowiaks contend that the sections of the Township's zoning ordinance that govern the special-use permitting process are unconstitutional because they are vague. "A constitutional challenge based on vagueness 'is brought under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.' " *Gasper*, 314 Mich App at 536, quoting *People v Lino*, 447 Mich 567, 575 n 2; 527 NW2d 434 (1994). "An act [or ordinance] is void for vagueness if '(1) it is overbroad and impinges on First Amendment freedoms, (2) it does not provide fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in determining whether the statute has been violated.' " *Kenefick*, 284 Mich App at 655, quoting *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 467; 639 NW2d 332 (2001). There is no claim that the Township's zoning ordinance impinges upon First Amendment freedoms. Accordingly, only the latter concerns are relevant to this appeal.

The version of the zoning ordinance at issue in this appeal was adopted in 2019. Beaver Township Zoning Ordinance, 2019-02. The Satkowiaks challenge the constitutionality of the provisions governing special-use permitting process in the agricultural district. Within the agricultural district, the following uses are explicitly permitted:

> (a) Farms, together with farm dwellings and buildings and other installations necessary to such farms.

> (b) Greenhouses, nurseries, orchards, vineyards, apiaries, chicken hatcheries, poultry and livestock farms.

> (c) Single family dwellings.

> (d) Roadside stands which sell only products grown or produced on the premises.

> (e) State licensed residential facility which provide resident service for six (6) or fewer persons, such as family day care homes, adult foster care homes, foster family homes, or foster family group homes . . . . [Beaver Township Zoning Ordinance, § 6.02.]

In turn, the following special land uses are allowed if a special land use permit is granted by the Planning Commission:

(a) Removal and processing of topsoil, stone, rock, sand, gravel, lime or other soil or mineral resources, subject to the provisions of Section 15.04(b).[3]

(b) Limited Commercial Enterprises (LCE).   Limited commercial enterprises are those land uses permitted by right in the B Business District which are conducted within a completely enclosed structure, which do not involve the outside storage of equipment, material, supplies, or inventory and which do not rely upon public water and/or public sewer service in their operations.  LCE are subject to the provisions in Section 15.04(c).

(c) Nursing homes, convalescent homes, and assisted living facilities when authorized as a special land use, subject to the provisions in Section 3.23.

(d) Group day care homes and child care centers, when authorized as a special land use, subject to the provisions in Section 3.22.

(e) Solar energy systems—free standing utility when authorized as a special use by the Planning Commission.  When considering such authorizing, the Planning commission shall consider the provisions of Section 3.24 and Chapter XV.

(f) Solar energy systems—attached small (2 – 20 kW) when authorized as a special use by the Planning Commission.  When considering such authorizing, the Planning commission shall consider the provisions of Section 3.24 and Chapter XV.

(g) Solar energy systems—free standing small (2 – 20 kW) when authorized as a special use by the Planning Commission.  When considering such authorizing, the Planning commission shall consider the provisions of Section 3.24 and Chapter XV.

(h) On-Site Wind Energy Conversion Systems (WECS) described in *part (c)* of *Section 3.25* and Utility-Scale Wind Energy Conversion Systems (WECS) when authorized as a special use by the Planning Commission.  When considering such authorization, the Planning commission shall consider the provisions of *Sections 3.25* and 5.03, and *Chapter XV*.

(*i*) Other uses which are of the same general character as other uses permitted in the AG District.  In consideration of a similar use, the Planning Commission shall consider the following standards

---

[3] On appeal, the Satkowiaks suggest that their use of the River Road property could potentially fall under the special use set forth in Beaver Township Zoning Ordinance, § 6.03(a).  However, because this is a facial challenge, not an as-applied challenge, the specific facts surrounding their claim are not relevant.  See *Bonner*, 495 Mich at 223.

(1) The size, nature, and character of the proposed use;

(2) The proximity of the proposed use to adjoining properties;

(3) The parking facilities provided for the proposed use;

(4) Any traffic congestion or hazard which will be created by the proposed use;

(5) How well the proposed use harmonizes, blends with, and enhances adjoining properties and the surrounding neighborhood;

(6) The need or necessity for the proposed use to service the needs of the surrounding neighborhood; and

(7) The effect of the proposed use on adjoining properties and the surrounding neighborhood. [Beaver Township Zoning Ordinance, § 6.03 (emphasis in original).]

Finally, any uses not "explicitly permitted" by the Beaver Township Zoning Ordinance are prohibited. Beaver Township Zoning Ordinance, § 3.16.

Chapter XV of the Township's Zoning Ordinances addresses special use permits. The Beaver Township Planning Commission is required to consider applications for special use permits "in accordance with the criteria for approval stated in Section 15.03, and such standards contained in this Ordinance which relate to the special uses under consideration." Beaver Township Zoning Ordinance, § 15.02(e). The following criteria are stated in § 15.03:

(a) General Standards—The Planning Commission shall review the particular circumstances of the special use request under consideration in terms of the following standards, and shall approve a special use only upon a finding of compliance with each of the following standards, as well as applicable standards established elsewhere in this Ordinance:

(1) The special use shall be designed, constructed, operated and maintained in a manner harmonious with the character of adjacent property and the surrounding area.

(2) The special use shall not change the essential character of the surrounding area and shall be designed to be compatible with the natural environment.

(3) The special use shall not be hazardous to adjacent property, or involves uses, activities, materials or equipment which shall be detrimental to the health, safety or welfare of persons or property through the excessive production of traffic, noise, smoke, fumes or glare.

(4) The special use shall not place demands on public services and facilities in excess of current capacity.

(5) The special use shall be consistent with the general principles and objectives of the Township's Master Plan and shall promote the intent and purpose of this Ordinance.

(6) The location of the special use within the zoning district shall minimize the impact of the traffic generated by the proposed use, taking into account proximity and access to thoroughfares and intersections, adequacy of sight distances, location of and access to off-street parking, and provisions for pedestrian traffic.

(7) Planning Commission shall also consider the following factors:

(*i*) The size, nature and character of the proposed use.

(*ii*) The proximity of the proposed use to adjoining property and the general effect on the surrounding neighborhood.

(*iii*) The parking facilities provided for the proposed use.

(*iv*) How the proposed use mixes with adjoining properties and the surrounding neighborhood.

(*v*) The need or necessity for the proposed use to service the needs of the Township.  [Beaver Township Zoning Ordinance, § 15.03.]

The Satkowiaks contend that § 15.03(a)(1), (a)(2), (a)(3), (a)(5), and (a)(6) fail to provide fair notice of what is required of an applicant and that they fail to establish explicit standards for the Planning Commission to apply when considering an application for a special use permit.  We disagree.

As explained in *Kenefick*, 284 Mich App at 655:

An ordinance provides fair notice if it gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required.  The statute cannot use terms that require persons of ordinary intelligence to guess its meaning and differ about its application.  A statute if sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words.  [Quotation marks and citation omitted.]

In order to be constitutional, an ordinance need not define every term in "minute detail," *Dep't of State Compliance & Rules Division v Mich Edu Assoc*, 251 Mich App 110, 120; 650 NW2d 120 (2002), nor does it have to be drafted with mathematical precision, *Mich Wolfdog Ass'n, Inc, v St. Clair Co*, 122 F Supp 2d 794, 802 (ED Mich, 2000).  Rather, it is sufficient if the language used is "reasonably precise."  *Dep't of State Compliance & Rules Division*, 251 Mich App at 120.

Finally, an ordinance encourages "arbitrary and discriminatory enforcement" when it fails to "place *any* constraints on" the discretion of those tasked with enforcing the ordinance. *Gasper*, 314 Mich App at 537-538. With these principles in mind, we turn to the sections of the Township's zoning ordinance identified by the Satkowiaks as being void for vagueness.

First, as noted above, Beaver Township Zoning Ordinance, § 15.03(a)(1) provides that a proposed "special use shall be designed, constructed, operated and maintained in a manner harmonious with the character of adjacent property and the surrounding area." We conclude that the language used in § 15.03(a)(1) is reasonably precise and gives a person of ordinary intelligence a reasonable opportunity to know what is required when applying for a special use permit. It also places restraints upon the exercise of the Planning Commission's discretion when determining whether or not a proposed special use is in compliance with this criterion.

Specifically, this criterion requires the Planning Commission to compare the design, construction, operation, and maintenance of a proposed special use against the adjacent property and the surrounding area to determine if the proposed special use and the existing uses are harmonious. Thus, there are constraints upon the Planning Commission's discretion in that it has to compare specific aspects of the proposed use to adjacent properties and the surrounding area. The Satkowiaks nevertheless contend that this is "fuzzy" language because of the use of the term "harmonious." Yet, the meaning of the term "harmonious" can be fairly ascertained by reference to a dictionary. See *Kenefick*, 284 Mich App at 655. See Merriam-Webster's Collegiate Dictionary (12th ed) (defining "harmonious" as "having the parts agreeably relate : CONGRUOUS <blended into a ~ whole>").

Considering that definition, we conclude that a person of ordinary intelligence would be capable of determining whether a use is or is not harmonious with adjacent properties and the surrounding area. For instance, if a proposed special use is the operation of a professional racetrack, the adjacent property is a single-family home, and the surrounding area consists entirely of single-family homes, it is clear that the proposed use does not agreeably relate with the adjacent property and surrounding area because of the noise, glare, smells, and traffic inherent in the operation of a racetrack. Alternatively, if the proposed use is an in-home child-care facility that cares for a small number of children, the adjacent property is used as a single-family residence, and the surrounding area is vacant farmland, a person of ordinary intelligence would be able to determine that the proposed use blends agreeably with the adjacent property and the surrounding area. Because a set of circumstances exist under which Section 15.03(a)(1) would provide fair notice of what is required and because the Planning Commission's discretion is not unfettered, the fact that the section might be unconstitutionally vague under a different circumstance does not render it invalid. See *Bonner*, 495 Mich at 223.[4]

---

[4] This does not mean that there will not be circumstances under which persons of ordinary intelligence would be left to guess whether a proposed use does or does not harmonize with the adjacent property or properties. However, under such circumstances, an as-applied challenge could be raised.

We next consider whether Beaver Township Zoning Ordinance, § 15.03(a)(2), is facially unconstitutional because it is vague. That section provides that "[t]he special use shall not change the essential character of the surrounding area and shall be designed to be compatible with the natural environment." The Satkowiaks take issue with the requirement that the use be designed to be compatible with the natural environment. To support their position, they argue that "corn" is arguably incompatible with the natural environment because it is not a naturally occurring food. We will not delve into such technical definitions, however, because it is well-settled that an ordinance is not vague if the meaning of the ordinance to be fairly ascertained using the "commonly accepted meaning of words." See *Kenefick*, 284 Mich App at 655.[5]

We further conclude that the term "natural environment" is not strictly confined to an environment that exists solely in nature because, when construing a statute or ordinance, terms are not read in isolation. *TruGreen Ltd Partnership v Dep't of Treasury*, 338 Mich App 248, 258; 979 NW2d 739 (2021). Rather, they must be considered in context. In this case, the criterion set forth in § 15.03 applies to all special use permits, including those areas zoned for agricultural, residential, or business purposes. See Beaver Township Zoning Ordinance, §§ 6.03 (agricultural district); 7.03 (rural residential); 8.03 (medium density residential); and 9.03 (business district). The "natural environment" of a business district will necessarily include urban characteristics that do not occur strictly in nature. Thus, the key consideration is not whether the purposed special use would be incompatible with nature, but whether it is incompatible with the natural environment of the relevant district. In that regard, the ordinance requires that the "essential" character of the "surrounding area" not be changed. The term "essential" is defined as "something basic or fundamental." Merriam-Webster's Collegiate Dictionary (12th ed). Thus, the essential character of farmland would include the storage and operation of farm equipment, the use of fertilizers and/or pesticides, the employment of farm workers, and the operation of trucks to transport the farm product.

We conclude that when considered in context this section is not facially unconstitutional. Similar to how a person of ordinary intelligence can reasonably ascertain whether a proposed use is harmonious, a person of ordinary intelligence can reasonably ascertain if a proposed use is compatible with the natural environment and whether it would change the essential character of the surrounding area. By way of example, a proposed special use in the agricultural district can include operation of an assisted-living home. Such a use would not change the essential character of farmland, nor would it be incompatible with the natural environment that would be created by farmland, which would reasonably include structures to house farmers, their staff, their equipment, and their crops. Additionally, because this section sets forth explicit standards for the Planning Commission to consider, there are constraints upon its discretion. In sum, because a person of ordinary intelligence can reasonably determine what is required by § 15.03(a)(2) and because there are constraints upon the Planning Commission's exercise of discretion, we conclude that there is a set of circumstances under which the ordinance is valid. See *Bonner*, 495 Mich at 223. Accordingly, the Satkowiaks' facial challenge to § 15.03(a)(2) fails.

---

[5] Moreover, the growing of corn is expressly permitted under Beaver Township Zoning Ordinance, § 6.02(a), so a person would not need to apply for a special-use permit in order to grow it.

Next, the Satkowiaks challenge Sections 15.03(a)(3), which provides that "[t]he special use shall not be hazardous to adjacent property, or involve uses, activities, materials or equipment which shall be detrimental to the health, safety or welfare of persons or property through the excessive production of traffic, noise, smoke, fumes or glare."[6] Specifically, they contend that a person must guess what constitutes "excessive" traffic, noise, smoke, fumes, or glare. They maintain, for example, that as written, the addition of one, ten, a hundred, or a thousand vehicles could all be considered excessive. The term "excessive" is defined as "exceeding what is usual, proper, necessary, or normal." Merriam-Webster's Collegiate Dictionary (12th ed). In isolation, the Satkowiaks are correct that even a single additional vehicle could be considered to exceed what is "normal." But, as noted above, language in an ordinance must be considered in context. *TruGreen*, 338 Mich App at 258-259. In context, traffic, noise, smoke, fumes, or glare is excessive only when it is detrimental to the health, safety, or welfare of persons or property. A person of ordinary intelligence would reasonably understand that the addition of a single additional vehicle would not produce traffic, noise, smoke, fumes, or glare that is detrimental to the health and safety of a person or property.

We can also conceive a set of circumstances under which the ordinance would be valid. See *Bonner*, 495 Mich at 223. In the case of a proposed special use of an in-care child-care facility for a small number of children, there would be an increase in traffic, noise, smoke, fumes, and glare. This would be caused by the parents of the children driving to the facility to drop off and pick up their children. Their vehicles would be additional traffic and could result in the emission of smoke or fumes and cause glare that did not exist previously. Yet, considering that only a small number of children would be served at the facility, the increase in traffic would not reasonably be understood to be excessive. The potential glare, smoke, and fumes caused by the parents dropping off and picking up their children would be minimal and limited in duration. Nothing in this set of circumstances suggest that the additional traffic, noise, glare, fumes, and smoke would be excessive or that it would be detrimental to the health and safety of persons or property. As such, the proposed use would be consistent with Section 15.03(a)(3).

Because a person of ordinary intelligence could understand what is required by the ordinance, it provides fair notice of what is required. Moreover, as there are explicit standards that the Planning Commission has to apply, it does not leave the Commission free to determine compliance on an arbitrary basis. Because there are circumstances under which the ordinance is valid, the Satkowiaks cannot prevail on their facial challenge to § 15.03(a)(3). See *Bonner*, 495 Mich at 223. Therefore, the Satkowiaks' facial challenge to § 15.03(a)(3) fails.

Finally, the Satkowiaks contend that § 15.03(a)(5) is unconstitutionally vague. That section places restraints upon the Planning Commission in that it must consider whether the proposed use is consistent with the general principles and objectives of the Township's Master

---

[6] The Satkowiaks also emphasize the requirement in § 15.03(6) that the location of the special use "minimize the impact of traffic generated by the proposed use . . ." Other than emphasizing the language, they offer no argument as to whether this language is unconstitutionally vague. As a result, we conclude that, to the extent that they intended to challenge this section, they have abandoned their argument on appeal. See *Mitcham*, 355 Mich at 203.

-10-

Plan.  This requires a comparison of the proposed use with the general principles and objectives of the Master Plan.  This criterion also requires that the proposed use promote the intent and purpose of the Zoning Ordinance, which can be ascertained by looking to the stated intent and purpose of the Zoning Ordinance.  Because it contains explicit standards, it does not encourage arbitrary enforcement.  See *Gasper*, 314 Mich App at 539.  As a result, the ordinance is not facially unconstitutional on the basis of vagueness as to the enforcement of the ordinance.  As to whether it provides fair notice of what is required, we conclude that the Satkowiaks have abandoned this issue on appeal by failing to reference the relevant language stating the purpose of the Township's zoning ordinance or the Township's Master Plan.  See *Mitcham*, 355 Mich at 203.

On appeal, the Satkowiaks contend that Section 15.03 of the Township's Zoning Ordinance is akin to the noise ordinance determined to be unconstitutionally vague in *Gasper*.  We disagree.  In *Gasper*, the ordinance provided that " '[n]o person shall use any premises or suffer any premises under his or her care or control to be used which shall destroy the peace and tranquility of the surrounding neighborhood.' "  *Gasper*, 314 Mich App at 531, quoting § 9.63(3) of the City of Grand Rapids' Noise Control Ordinance.  In finding the ordinance void for vagueness, the *Gasper* Court reasoned that the ordinance provided "virtually no guidance to a citizen in determining whether his or her conduct is prohibited" and that it also vested "the enforcing officer with almost complete discretion to determine whether the ordinance has been violated."  *Id*. at 538.  That is, "[a] person making noise in a neighborhood" would have "to guess whether law enforcement would consider his or her conduct as destroying the peace and tranquility of the neighborhood" because the ordinance did not provide any "standard for determining what destroys the peace and tranquility of a neighborhood . . . ."  *Id*. at 539.  The *Gasper* Court, however, noted that a reasonable person would be sufficiently aware of conduct that merely disturbs, rather than destroys, the peace.  *Id*. at 539-540.  See also *City of Lansing v Hartsuff*, 213 Mich App 338, 342; 539 NW2d 781 (1995) (holding that "[a]n ordinary person exercising common sense can sufficiently understand the term 'loud or boisterous,' especially when the term is modified by the phrase 'disturb the public peace and quiet' and that the term was not so subjective and vague so as to permit unlimited discretion by those tasked with enforcing the ordinance).

Here, unlike the ordinance in *Gasper*, a person of ordinary intelligence would be aware of what is required under the challenged sections of § 15.03, and the Planning Commission's discretion to approve or deny a special use permit is constrained by explicitly identified criteria.  The fact that some conceivable circumstances might exist under which the ordinance is invalid is insufficient to establish that a statute is facially invalid.  See *Bonner*, 495 Mich at 223.

In sum, to prevail upon a facial challenge to the constitutionality of a statute—including a challenge based upon vagueness—the burden is on the plaintiff to show "that no set of circumstances exists under which the ordinance would be valid."  *Bonner*, 495 Mich at 223.  Because the Satkowiaks have not met that burden, we conclude that the Township's Zoning Ordinance is not unconstitutional.

Finally, the Satkowiaks contend that their use of the property constitutes a prior non-conforming use.  We will not address the validity of this claim because it was not raised in their complaint or their amended complaint.  As such, it is not properly before this Court.  See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

-11-

Affirmed.  The Township may tax costs as the prevailing party.  MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin